IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN REYNOLDS,                              *
        Plaintiff,

    v.                              *              CIVIL ACTION NO. DKC-13-2495

BOBBY P. SHEARIN,  et al.,                  *
        Defendants.

                       ***

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the Alternative Motion for Summary Judgment filed by Defendants former Warden Bobby P. Shearin and former Chief of Security Keith R. Arnold. ECF No. 19.   Plaintiff has responded.[1]   ECF No. 24.   Defendants and Plaintiff have filed additional sur-replies.  ECF Nos. 31 & 32.  Upon review of the papers and exhibits filed, the court finds an oral hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons stated below, Defendants' dispositive motion will be granted.

### Background

John Reynolds is an inmate held at the North Branch Correctional Institution ("NBCI"). Plaintiff complains, and Defendants confirm, that on October 26, 2012, he received a notice of an inmate rule violation charging him with violation of Rule 105 (use, possession, or manufacture of a weapon).  ECF No. 1, p. 3; ECF No. 19, Ex. 1, Ex 2, pp. 9-11.  At a November 1, 2012 adjustment hearing Plaintiff pleaded guilty and was sentenced to 275 days of disciplinary segregation, loss of 120 good conduct credits, and indefinite loss of visitation privileges.  *Id.*  On November 26, 2012, Plaintiff received a "Notice of Administrative Action" stating that in addition to his adjustment conviction he was being sentenced to 60 days of cell-restriction by the Reduction in Violence Committee ("RIV").  ECF No. 1, p. 3; ECF No. 19, Ex. 2, p. 1.

---

[1] Plaintiff's opposition is entitled "Motion for Jury Trial, or in the Alternative, Motion for Summary Judgment in Opposition to Defendants Motion to Dismiss."  ECF No. 24.  For the reasons that follow the Motion will be denied.

Plaintiff alleges that during cell restriction he was permitted one hour of out-of-cell exercise per week, in violation of his constitutional rights.  ECF No. 1, p. 3.  Plaintiff's segregation confinement records from November 27, 2012 to January 27, 2013, show that Plaintiff received recreation on December 11, 13, and 18, 2012, and January 2, 3, 9, 14, 28 and 29, 2013.  ECF No. 19, Ex. 3.  Plaintiff verbally refused recreation on November 30, 2012, December 5, 6, 7, 10, 17, 19, 28, and 31, 2012, and January 4, 7, 8, 17 and 18, 2013.  *Id.*  Recreation was cancelled due to security concerns or inclement weather on December 4, 12, 25, and 26, 2012, January 11, 16, 22, 23, 24, 25, and 31, 2013. *Id.*

Plaintiff claims that Defendants' records are fabricated and that on unspecified dates that Defendants claim no recreation was held, recreation in fact occurred.  ECF No. 24, p. 10. Plaintiff disputes that he ever verbally refused recreation.  *Id.*  He also alleges that the practical impact of assigning an inmate to cell restriction while housed on disciplinary segregation is the restriction of out of cell exercise to one hour per week.  *Id.*, Ex. 4; ECF No. 32, Ex. III(A)(3) (Affidavits from NBCI inmates attesting that while serving cell restriction on disciplinary segregation at NBCI they were provided one hour of outdoor recreation weekly).  He notes that inmates otherwise housed on disciplinary segregation and not subjected to cell restriction are generally entitled to five hours of outdoor recreation weekly.  ECF No. 24, Ex. 3, p. 78.  Per the NBCI policy manual, recreation for segregation inmates is weather and temperature dependent, and inmates are advised that outdoor exercise is a privilege which may be denied, with cause, by the Unit Manager.  *Id.*  Additionally, segregation inmates are advised that if an inmate receives an infraction while on segregation their recreation may be withheld pending the adjustment hearing. *Id.*

2

Defendants attempt to clarify the meaning of cell restriction by indicating that cell restriction imposed by the RIV "means restriction of a resident to remain in a designated area preventing the resident from participating in resident activities including recreation, commissary activities but not work and school assignments, meals, showers, visits, facility passes and medical or psychological appointments." Ex. 31, Ex. 2. Disciplinary segregation inmates assigned to cell restriction receive recreation one day per week, pursuant to NBCI-Institutional Direction 110.0006.1, Appendix 3. *Id.* Despite the apparent contradiction in the effects of cell restriction i.e. all loss of  recreation versus one hour weekly recreation for inmates already assigned to segregation, the parties agree that Plaintiff received at least one hour of recreation weekly while assigned to cell restriction. This fact is not in dispute.

Plaintiff offers that he attempted to have his complaints regarding lack of out of cell activity addressed through the administrative remedy process ("ARP") but Defendants and others associated with the ARP process misconstrued his grievances as raising claims regarding the RIV, rather than lack of out of cell exercise. *Id.*, pp. 4-9.

### Standard of Review

A.     Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the  plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563.  The court need not,

however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d

870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,*

478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual

events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.      Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant is
> entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will

defeat the motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*,

346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The

court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all

inferences in her favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.    Supervisory Liability

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that

5

supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Plaintiff's claims against Warden Shearin and Chief of Security Arnold are that they were involved in reviewing Plaintiff's ARP and/or signed off on the RIV's recommendation. Such claims, lacking in personal involvement in Plaintiff's lack of out of cell activity, are insufficient to state a claim against the named Defendants. Plaintiff has pointed to no action or inaction on the part of the named Defendants that resulted in a constitutional injury, and accordingly, his claims against Shearin and Arnold shall be dismissed. This determination, however, does not end the court's inquiry.

B.    Conditions of Confinement

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the

6

deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) *citing Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of

a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

There is some evidence that from November 27, 2012 to January 27, 2013, Plaintiff received out of cell recreation on at least nine days.  He may have refused out of cell recreation on 13 occasions, although he denies doing so.   Additionally, Defendants contend that, due to inclement weather and security concerns, out of cell recreation was cancelled on 11 days.  The parties do agree that Plaintiff received out of cell recreation at least once per week during the time he served on cell restriction.  Plaintiff has not alleged, much less demonstrated that he suffered any harm as a result of the limitation of his out-of-cell activity.  Plaintiff's limited lack of out-of-cell activity, while harsh, does not constitute cruel and unusual punishment, particularly where there is no resultant injury.[2]   As such, Defendants are entitled to summary judgment on his conditions of confinement claim.[3]

---

[2]     The absence of an injury alone is enough to defeat Plaintiff's claim.  *See* 42 U.S.C. § 1997e(e) (barring inmate lawsuits where there is no showing of physical injury).

[3]     Even if the court found an Eight Amendment violation, Defendants would be entitled to qualified immunity. When performing discretionary functions, government officials such as Defendants are "entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rish v. Johnson*, 131 F.3d 1092, 1095 (4th Cir. 1997)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In determining whether the legal right is clearly established, it is critically important to avoid defining the applicable right at too abstract a level." *Id.* at 1095-1096.

Two inquiries must be satisfied to determine whether an official is entitled to qualified immunity:   (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful. *See Suacier v. Katz*, 533 U.S. 194 (2001).

The Supreme Court has clarified that courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstance in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The first prong considers whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue.  *Id.*  If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.  The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a ... motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir.

C.      Due Process RIV

Plaintiff clarifies in his opposition to Defendants' dispositive motion that he does not

claim that he was sanctioned by the RIV with 60 days of cell restriction as a retaliatory tactic as

Defendants indicate in their motion, but rather that the sanctions were imposed without due

process.  ECF No. 24, p. 8.  Plaintiff's claim is without merit.

In prison disciplinary proceedings which bring the possible loss of good conduct credits, a

prisoner is entitled to certain due process protections.  *See Wolff v. McDonnell*, 418 U.S. 539, 564

(1974).  These include advance written notice of the charges against him, a hearing, the right to

call witnesses and present evidence when doing so is not inconsistent with institutional safety and

2007)(citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)).  Pursuant to *Pearson v. Callahan*, in an appropriate case, the court can resolve the issue by looking only at the second prong.  *Pearson,* 129 S. Ct. at 818.

The Fourth Circuit has addressed the requirements for meeting the second prong of the qualified immunity analysis.

> Although the exact conduct at issue need not have been held unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987); *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (explaining that "[t]he fact that an exact right allegedly violated has not earlier been specifically recognized by any court does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes" and that " '[c]learly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked").

*Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005).  The sources of law to examine are limited:

> Clearly established rights include specifically adjudicated rights as well as those manifestly included within more general applications of the core constitutional principles involved. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998).  There are three ways in which law becomes clearly established in Maryland:  (1) an authoritative decision by the United States Supreme Court; (2) an authoritative decision by the Fourth Circuit Court of Appeals; or (3) an authoritative decision by the Court of Appeals of Maryland. *Id.* Decisions from other circuits or states are not authoritative for qualified immunity analysis. *Id.*

*Gray v. Torres*, 2009 WL 2169044, *2 (D.Md. 2009)(applied in the § 1983 context as to a state actor).  Qualified immunity applies "if officers of reasonable competence could disagree" on whether the conduct at issue was unlawful. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  There is no authoritative decision setting forth the precise number of hours of out of cell recreation an inmate must receive under the Eighth Amendment.  As such, it would not have been clear to a reasonable officer at the time of the incident that failure to provide more than one hour of recreation weekly to an inmate placed on cell restriction while housed on disciplinary segregation would violate the Eighth Amendment.  Thus, Defendants have met their burden of proof on the second prong of the qualified immunity analysis.

correctional concerns, and a written decision.  *Wolff*, 418 U.S. at 564-571.  Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff received all the process he was due.  He was given timely advance written notice of the infraction and permitted to attend the disciplinary hearing, where he pleaded guilty.  The hearing officer's determination of guilt was based upon some evidence, i.e. review of Plaintiff's plea, physical evidence, and the written record.

Plaintiff's contention regarding the additional sixty days of cell restriction imposed by the RIV is without merit.  Principally, there is no additional procedural due process requirement on sentences imposed after a guilty finding or a review and alteration of a sentence imposed after a guilty finding.  *See Wolf*, 418 U.S. at 563.  Simply stated, Plaintiff was not entitled to additional procedural protections in order for the RIV to review the adjustment proceedings.  The RIV did not revoke additional good conduct credits and thus did not lengthen the amount of time Plaintiff must serve.

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Under the Supreme Court's pronouncement in *Sandin v. Conner*, 515 U.S. 472 (1995), the focus on mandatory language in prison regulations was rejected.  A liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" without regard to mandatory language in prison regulations.  *Id.* at 484.  Thus, the due process inquiry must focus on the nature of the deprivation alleged and not on the language of particular prison regulations.  *Id.*  Following the reasoning of the Supreme Court in *Sandin*, the Fourth Circuit held

that a liberty interest is not implicated when inmates are placed on administrative segregation, because upon comparison with those conditions they would expect to experience as an ordinary incident of prison life, it does not constitute an atypical and significant hardship.  *See Beverati v. Smith*, 120 F.3d 500, 502-04 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996).  In *Beverati*, the Fourth Circuit, in affirming the decision of this court, held that Beverati's placement in administrative segregation did not comparatively constitute the type of hardship necessary to give rise to a liberty interest in avoiding such placement.  *See Beverati*, 120 F.3d at 503.  This court finds that there is nothing in the record or pleadings which shows that the nature of Plaintiff's assignment to cell restriction comprised the atypical hardship contemplated by *Sandin* or *Beverati*.  Thus, such restriction does not implicate a liberty interest.

     D.     ARP process

Plaintiff alleges there were problems with the processing of his administrative remedy requests.  While the long-standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the issue is less clear.  The PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner.  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further clarification regarding exhaustion as a pleading requirement was announced by the United States Court of Appeals for the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674 (4th Cir. 2005), wherein the

court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id*. at 681.  To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense.  *Id*. at 682.  Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause.

Assuming, *arguendo*, that unnamed Defendants did not satisfactorily investigate or respond to Plaintiff's remedy requests and misconstrued his complaint, Plaintiff's claim fails as he has not alleged, much less demonstrated, any injury as a result of the alleged failure to sign off or properly process his ARPs.

### Conclusion

The dispositive motion filed on behalf of Defendants will be granted.  A separate Order follows.


Date:  <u>February 10, 2015</u>          _____/s/_____
                                         DEBORAH K. CHASANOW
                                         United States District Judge

12